# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### Louisville Division
### *Electronically Filed*

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**


**v.**                                        **CASE NO:3:16-cr-40**

**JOHN TREUFELDT**                                                **DEFENDANT**


DEFENDANT'S SENTENCING MEMORANDUM
&
MOTION FOR *USSG § 5K2.13* DOWNWARD DEPARTURE
&
MOTION FOR *BOOKER* VARIANCE

COMES NOW the Defendant, JOHN TREUFELDT, by and through Counsel, and

respectfully tenders his Sentencing Memorandum.   For the reasons set forth herein, the Mr.

Treufeldt respectfully moves this Honorable Court pursuant to ***Unites States v. Booker, 543 U.S.***

***220 (2005)*** for a sentencing variance and pursuant to ***USSG § 5K2.13***  for a downward departure

from the advisory Sentencing Guideline range of 97 months to 121 months' imprisonment.

### **Sentencing under *Booker***

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in

***Blakely v. Washington, 124 S. Ct. 2531 (2004)*** and ***Apprendi v. New Jersey, 530 U.S. 466***

***(2000)*** applies to the Federal Sentencing Guidelines. ***United States v. Booker, 125 S. Ct. 738,***

***756 (2005)***. Given the mandatory nature of the Sentencing Guidelines, the Court found "no

relevant distinction between the sentence imposed pursuant to the Washington statutes in ***Blakely***

and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the

Court.  ***Id. at 751.***  Accordingly, reaffirming its holding in ***Apprendi***, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to
> support a sentence exceeding the maximum authorized by the facts
> established by a plea of guilty or a jury verdict must be admitted by
> the defendant or proved to a jury beyond a reasonable doubt.

*Id. at 756.*

Based on this conclusion, the Court further found those provisions of the federal

Sentencing Reform Act of 1984 that make the Guidelines mandatory, *18 U.S.C. § 3553(b)(1)* or

which rely upon the Guidelines's mandatory nature, *18 U.S.C. § 3742(e)*, incompatible with its

Sixth Amendment holding. *Booker, 125 S. Ct. at 756*. Accordingly, the Court severed and

excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id. at 757.*

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as

revised by *Booker*,

> requires a sentencing court to consider Guidelines ranges, *see 18
> U.S.C.A. § 3553(a)(4) (Supp.2004)*, but it permits the court to
> tailor the sentence in light of other statutory concerns as well, *see §
> 3553(a).*

*Booker, 125 S. Ct. at 757*. Thus, under *Booker*, sentencing courts must treat the guidelines as

just one of a number of sentencing factors set forth in *18 U.S.C. § 3553(a).*

The primary directive in *Section 3553(a)* is for sentencing courts to "impose a sentence

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."

*Section 3553(a)(2)* states that such purposes are:

(A)   to reflect the seriousness of the offense, to promote respect for the law,
and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, *§ 3553(a)* further directs sentencing courts to consider the following factors:

1)    "the nature and circumstances of the offense and the history and characteristics of the defendant" *(§ 3553(a)(1)*;

2)    "the kinds of sentences available" *(§ 3553(a)(3)*;

3)    "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" *(§ 3553(a)(6)*; and

4)    "the need to provide restitution to any victims of the offense." *(§ 3553(a)(7)*.

Other statutory sections also give the district court direction in sentencing.  Under *18 U.S.C.§ 3582*, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the *Section 3553(a)* factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under *18 § U.S.C. 3661*, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See U.S.S.G. § 5H1*; *see also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with*

*age); citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004).*

The directives of ***Booker*** and ***§ 3553(a)*** make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in ***Booker***, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in ***Booker***, directing courts to consider all of the ***§ 3353(a)*** factors, many of which the guidelines either reject or ignore." ***United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. 2005) (Adelman, J.)***. As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in ***Booker***." ***See United States v. Jaber, 362 F.Supp.2d 365, 371 (D. Mass. 2005) (Gertner, J.); see also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence", reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).***

Justice Scalia explains the point well in his dissent from ***Booker's*** remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise-if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed-its opinion would surely say so.

***Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part)***. Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other ***Section 3553(a)*** factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the **§ 3553(a)** factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors set forth in **§ 3553(a)**, these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range)*.

## I.    CRIMINAL HISTORY CATEGORY & GUIDELINE CALCULATION

Mr. Treufeldt has a criminal history category of I.  That fact is beyond dispute.  The U.S. Probation Office calculated Mr. Treufeldt's offense level at 0.  Therefore the advisory Guideline range here is 97 to 121 months.  Mr. Treufeldt agrees with this calculation.

## II.    A SENTENCE SHOULD BE SUFFICIENT BUT NOT GREATER THAN NECESSARY TO MEET THE REQUIREMENTS OF §3553(a)

### Application of the Statutory Sentencing Factors to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.    <u>The Nature and Circumstances of the Offense and the History and Characteristics of the Offender</u>

The views and observations of those who have written letters on Mr. Treufeldt's behalf provide  the Court with the "history and characteristics of the defendant," that Congress has determined to be a central consideration for courts in imposing sentence." *18 U.S.C. §*

*3553(a)(1)*. Surely, too, they enter into the determination of what sort of sentence is needed "to provide just punishment for the offense," *18 U.S.C. § 3553(a)(2)(A)*, and needed "to protect the public from further crimes of the defendant." *§ 3553(a)(2)(C).*

(a)     Nature and Circumstances of Offense

The Defendant is charged with Receipt of Child Pornography which is a class C felony. The Defendant logged onto a child pornography website and downloaded over 600 images of child pornography that included pre-pubescent images and sadomasochism.

When federal agents searched the residence, the Defendant gave the agents access to the encrypted files and was honest with them in admitting his crime. He was completely cooperative with the agents.

(b)     History and Characteristics of Mr. Treufeldt

i.     Family Ties and Responsibilities

The Defendant is married to Melissa Devereux. The two were married on May 18, 1996, in Akron, Ohio. They have two children, Connor, age 17, and Isabella, age 15. The children currently reside with their mother at 7904 Bridlevista, Louisville, Kentucky 40228. The Defendant also has an elderly father lives in Ohio and his elderly mother lives in Colorado.

The Defendant has always been the primary financial provider for his family until he was terminated from his longtime employment due to this indictment. Nonetheless the Defendant attempted to continue to support his family by obtaining employment at Wal-Mart. The family has suffered financially since the Defendant was taken into custody at the change of plea hearing.

ii.     Physical/Medical Condition

The Defendant is in reasonably good health.  Mr. Treufeldt is deaf in his right ear and has

sleep apnea. Mr. Treufeldt  currently has a hernia requiring surgery and two bulging disks. He

also wears a bite guard mouthpiece at night due to a jaw disorder. He is not currently taking

any medication**.**

iii.    Mental and Emotional Health

 The Defendant does not have any features of psychopathy or mental illnesses that would

affect or impinge upon his ability to abide by the law in the future.  Defendants with mental

illness are more prone to recidivism. ***See Skeem & Peterson, University of California, Berkeley***

***" Major Risk Factors for Recidivism Among Offenders with Mental Illness", http://risk-***

***resilience.berkeley.edu/sites/default/files/pdfs/publications_articles/CrimNeedsCSG_Revised_***

***Clean.pdf, ("The face that criminogenic needs are so common among offenders with mental***

***illness is unlikely that treatments that narrowly target mental health symptoms will be***

***effective at reducing recidivism for this population").***    This may be due to the fact that

individuals with mental illness will often cease taking psychotropic medications or stop attending

therapy.  Relapses in mental health often lead to relapses of criminal behavior.

This is not a concern with Mr. Treufeldt.  Mr. Treufeldt has for his victims as well as his

own family and that he has the ability to accept responsibility for his behavior and feel remorse.

The importance of this cannot be overlooked.

iv.    Educational and Vocational Skills

Mr. Treufeldt's education and history of employment justify a below-guideline sentence.

There was a time, of course, when district  courts were limited in their ability to rely upon

circumstances such as age and employment history in arriving at a sentence.  That, though, is no

longer the case, and now sentencing courts are required to consider such factors:

The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable,  or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual 5H1.1-6, 11, and 12 (Nov. 2006).n3.   These are, however, matters  that § 3553(a) authorizes the sentencing judge to consider. See, e.g., 18 U.S.C. § 3553(a)(1).

*Rita v. United States, 551 U.S. 338, 364-365 (2007) (Stevens, J. concurring)*; *see also United States v. Jarvi, 537 F.3d 1256, 1263 (10th Cir. 2008) ("We have now held that district courts have broad discretion to consider individual characteristics like age, employment, and criminal history in fashioning an appropriate sentence under 18 U.S.C. § 3553(a), even when disfavored under the Guidelines or already accounted for in another part of the calculation")*.

Mr. Treufeldt  is a college graduate. He attended Kent State University and received a Bachelor's Degree in Business Administration in December 1990.  *See PSR 44.*  Statistical studies in the field of criminal justice have shown that the higher the level of education a convict has, the lower the chance they will re-offend:

> The post-release employment rate was 64.4 percent among non-violent offenders who had a 2-year college education. The recidivism rate among non-violent offenders who had a 2-year college degree was 32.9 percent.

*"The Post-Release Employment and Recidivism Among Different Types of Offenders With A Different Level of Education: A 5-Year Follow-Up Study in Indiana", John M. Nally, Ed.D., Susan Lockwood, Ed.D., Taiping Ho, Ph.D., and Katie Knutson, M.P.A.*, *Justice Policy Journal, vol. 9, no. 1, Spring 2012*, *pg. 13-14*.  Because Mr. Treufeldt's education increases his probability of obtaining stable post-conviction employment, then his chances of recidivism are lowered.

Similarly, the courts have recognized that employment history is a valid justification for a below-guideline sentence. ***See Kimbrough v. United States, 552 U.S. 85, 110 (2007) ("second, the [district] court considered Kimbrough's 'history and characteristics.' § 3553(a)1) . . . [noting] that Kimbrough has no prior felony convictions, that he had served in combat during Operation Desert Storm and received an honorable discharge from the Marine Corps and that he had a steady history of employment")(emphasis added); United States v. Sota, 2010 U.S. Dist. LEXIS 53118, \*14-15 (E.D. Wis. April 30, 2010); United States v. Garza, 2008 U.S. Dist. LEXIS 100400, \*8 (N.D. Ill. December 4, 2008).*** Again, the interplay of education and employment are directly intertwined with risk of recidivism.

The defendant was employed with B.W. Rogers as a Quality Improvement Manager from 1996 until he was terminated in 2016 due to this indictment. During his tenure at B.W. Rogers he was promoted several times. He advised that he earned $80,000 annually plus bonuses. ***See PSR 45.***

The Defendant also was enlisted in the National Guard as an M.P. for 33 years. The Defendant retired at the rank of Lieutenant Colonel. During his decades of service, the Defendant served in Iraq twice, in New Orleans during Hurricane Katrina, served in Kentucky during the ice storm in 2009.

His military education included:

- 2010 MP Officer Transition Course Ft. Leonard Wood, MO

- 2010 Ordnance 91A Course USACCP

- 2010 Support Officer Course NGPEC

- 2005 CGSOC 100th USAR, Louisville, KY

- 1997 CLPCC I & II Ohio Regional Training Institute

- 1996 CAS3 USAR, Ft Leavenworth

- 1992 Signal Officer Advanced Course Ft.Gordon, GA

- 1990 Air Assault School Ft.Gruber, OK

- 1988 Signal Officer Basic Course Ft.Gordon, GA

- 1987 Officer Candidate School Ohio Military Academy

- 1983 Basic Training, 63N AIT Ft.Dix, Ft.Knox

      v.    <u>Prior Criminal History</u>

The Court should impose a sentence below the Guidelines because this will be the Defendant's first criminal conviction. Research performed by the United States Sentencing Commission has shown that defendants like Mr. Treufeldt who have no prior criminal convictions have an even lower rate of recidivism than those individuals in criminal history category I who do have a prior criminal history: defendant's like Mr. Treufeldt are "the most empirically identifiable group of federal offenders who are least likely to offend." ***United States Sentencing Commission, Recidivism and the "First Offender", May 2004.*** First offenders recidivate less frequently in a way that's not taken into account by the sentencing guidelines. ***See "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score", at 14-15, available at http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf; see also U.S. v. Cabrera, 567 F. Supp. 2d 271 (D. Mass. 2008) (significantly reducing a sentence based on the fact that defendants with zero criminal history points are less likely to recidivate than other defendants in criminal history category I).***

    2.    <u>The Need for the Sentence Imposed To Promote Certain Statutory Objectives</u>:

        i.    <u>To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense</u>

This is a serious sexual offense. And this Honorable Court has a duty to impose a sentence that will promote respect for the law and provide just punishment. However a sentence below the guidelines would achieve a deep and profound respect for the law from Mr. Treufeldt who has otherwise been a law-abiding citizen and productive member of society his entire life.

This lack of prior criminal history means that a sentence of incarceration carries a more significant impact upon this Defendant then it would upon an individual with a prior history in the criminal justice system. This was the rational behind the court's holding in *U.S. v. Baker* in upholding a sentencing reduction based on the finding that "a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned." *U.S. v. Baker, 445 F.3d 987, 992 (7th Cir. 2006).* "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend." *U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).*

The mere fact that the Defendant is becoming a convicted felon is in itself a serious punishment.  The Defendant is losing his right to vote, his right to hold office, his right to sit on a jury, and his right to possess a firearm. Additionally the Defendant is losing the ability to possibly obtain different professional licenses. Also there are many other "collateral consequences" of a felony conviction, under both state and federal law. "Criminal conviction brings with it a host of sanctions and disqualifications that can place an unanticipated burden on individuals trying to re-enter society and lead lives as productive citizens. The impact of these "collateral consequences" is often discussed in the context of offender re-entry....[c]ollateral consequences tend to last indefinitely, long after an individual is fully rehabilitated."

*"Beyond the Sentence - Understanding Collateral Consequences", Sarah B. Berson, National Institute for Justice, http://www.nij.gov/journals/272/pages/collateral-consequences.aspx.*

Finally this conviction has a dramatic and harsh effect upon the Defendant's future employment. In November 2010 the Center for Economic and Policy Research released a study titled "Ex-offenders and the Labor Market," which found that a felony conviction or imprisonment significantly reduces the ability of ex-offenders to find jobs, costing the U.S. economy an estimated $57 to $65 billion annually in lost economic output. "Two prominent studies by Devah Pager involved employment audits of men in Milwaukee and New York City. Both studies, funded by NIJ [National Institute for Justice], found that a criminal record reduces the likelihood of a job callback or offer by approximately 50 percent." *"In Search of a Job: Criminal Records as Barriers to Employment", Amy L. Solomon, National Institute of Justice, http://www.nij.gov/journals/270/pages/crim inal-records.aspx.*

These facts should be considered by the Court when imposing a sentence that is sufficient but not greater than necessary to fulfill the purposes of the Sentencing Reform Act. These facts show the Court that there is definitely punishment in a conviction, beyond just a term of incarceration. Indeed the United States Supreme Court chided the lower courts for giving no weight to the substantial restriction of freedom involved in a term of supervised release or probation. *See United States v. Gall, 128 S.Ct. 586 (2007)*.  The Supreme Court said that even "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall at 596 (citing United States v. Knights, 534 U.S. 112, 119, (2001)); see also Griffin v. Wisconsin, 483 U.S. 868, 874 (1987) ("Inherent in the very nature of probation is that probationers `do not enjoy the absolute liberty to which every citizen is entitled").*

ii.    To afford adequate deterrence to criminal conduct

Due to the high range of the Sentencing Guideline calculation herein, even a downward departure to the mandatory minimum would be sufficient to deter criminal conduct in the community.  When enacting this statute, Congress found that a term of five years imprisonment was certainly sufficient punishment for this crime, although leaving the door open to higher sentences for severe offenders.

iv.   <u>To protect the public from further crimes of the defendant</u>

As part of his conviction, the Defendant is subject to a mandatory minimum of five years up to lifetime supervised release.  Also based upon the nature of the offense, the Defendant will become a convicted sex offender and will be required to register as such in any state that he resides in.  Further, the Defendant will be subject to serious terms and conditions as a registered sex offender, including but not limited to prohibitions on where he can live, prohibitions on his internet access and behavior, prohibitions on where he can work, a duty to report a change of address, etc. In Kentucky, and many other states, it is a state felony offense to fail to register.

A term of lengthy supervised release combined with the registration requirements will help deter the Defendant from any future conduct.  This obviates the need for a lengthy Guideline range sentence as well.

The best way to predict future behavior of a defendant is to look at their past behavior. John Treufeldt has absolutely no criminal history whatsoever. This issue has been extensively briefed in the above-section "History and Characteristics" in the 'Criminal History' subsection.  As supported by both extensive empirical studies and case law, the Defendant is an extremely low risk to re-offend, based upon a variety of factors. A below-guideline sentence would be sufficient to deter the Defendant from any future criminal conduct, because such a sentence will have a huge impact on his life.

            v.        <u>To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

The Defendant is not in need of educational or vocational training, medical care or other correctional treatment.

     3.     <u>The Kinds of Sentences Available</u>

There is a 5 year mandatory minimum applicable to this

     4.     <u>The Sentencing Range Established by the Sentencing Commission</u>

In **Booker**, the Supreme Court severed and excised **18 U.S.C. § 3553(b),** the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. **Booker, 125 S. <u>Ct. at 756</u>**. This renders the sentencing guidelines advisory. **Id**. Therefore the Court has the authority to impose any sentence it finds satisfies the statutory sentencing requirements imposed by Congress and meets the mandatory minimum.

     5.     <u>The Need To Avoid Unwarranted Disparities</u>

There are no co-defendants to create a disparity.  Further a mandatory minimum sentence is not unwarranted herein.

     6.     <u>Variances and Departures</u>

            i.        <u>Mr. Treufeldt's Age Supports A Sentence Below The Guideline Range</u>

Mr.Truefeldt is fifty-one (51) years old.  Statistics support the argument that because of his age at the time of conviction, that Mr.Truefeldt is an extremely low risk to re-offend.  ***See, United States Sentencing Commission, Recidivism: Criminal History Computation of the Federal Sentencing Guidelines (2004), Ex. 9 (which shows that those in the age group of 41 to 50 who fall in criminal history category I have an especially low recidivism rate of 6.9%, as compared to those, for example, in the 36 to 40 years of age bracket who recidivate at a rate of 12.1% and***

*those under age 21 who recidivate at a rate of 29.5%); see also United States v. Carmona-Rodriguez, 2005 WL 840464, *5 (S.D.N.Y. 2005) (observing that those defendants "over the age of 40 . . . exhibit markedly lower rates of recidivism in comparison to younger defendants.); see also USSC, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 & Exh. 9, available at http://www.ussc.gov/publicat/Recidivism_General.pdf (finding only 9.5% of offenders over 50 commit new crimes within 2 years of release).*

In addition to the Sentencing Commission, the courts have also recognized that the age of a defendant is relevant to recidivism and therefore important in sentencing.  *See U.S. v. Thomas, 360 F. Supp. 2d 238, 243 (D. Mass. 2005) ("[d]efendant, at the time of his release in his late fifties or early sixties, will offer no danger to the community"); see also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. 2005)*; *see United States v. Carter, 538 F.3d 784 (7th Cir. 2008) (affirming 24-month sentence in money laundering case with an original guideline range of 87-108 months based in part on the conclusion that defendant's age (61) rendered her a lower risk of recidivism).*  This type of downward departure or variance here would be proper in light of the age of Mr.Truefeldt in his first criminal conviction ever.

ii.   Mr. Treufeldt's Exemplary Military Service Supports a Below-Guideline Sentence

Many courts have used military service as a grounds for a downward variance or departure. *See United States v. Bruder, 103 F.Supp.2d 155 (E.D.N.Y. 2000), rev'd in part, vacated in part, by United States v. Schwarz, 283 F.3d 76 (2d Cir. 2002) (The district court did not err when it departed downwards four offense levels based, in part, on defendant's family ties, solid employment history, and military service in the Marine Corps (which included various decorations and honorable discharge).*  The Sixth Circuit has specifically upheld the use of

military service as grounds for a departure or variance.  ***See United States v. Panyard, 2009 WL 1099257 (E.D. Mich. 20090 (At defendant's sentencing for environmental offenses, district court reasonably varied below the advisory 27-33 month range to impose 15 months imprisonment after concluding that military service during Desert Storm (served on a Navy destroyer and carried a top secret clearance) lent moderate support for a variance.); see also United States v. Cole, 622 F.Supp.2d 632 (N.D. Ohio 2008). At defendant's sentencing for securities fraud offenses, the district court varied below the advisory 30-37 month range to impose 366 days imprisonment and a $180,000 fine in consideration of the defendant's lack of criminal history, admirable military service (which included a combat tour in Viet Nam as a Special Forces officer and the receipt of 2 Bronze Stars), community involvement, and a history of having sacrificed to raise two children.***

Here the Defendant served in the National Guard for 33 years, enlisting straight out of high school and retiring at the onset of this litigation.  The Defendant was promoted to Lieutenant Colonel in 2008 and held that rank until his retirement.  He served as a military policeman.

The Defendant's military records indicate he won a multitude of awards and commendations during his decades of service.  The list includes:

- Bronze Star Medal

- Meritorious Service Medal

- Army Commendation Medal

- Army Achievement Medal (2 awards)

- Army Reserve Components Achievement Medal (8 awards)

- National Defense Service Medal (2 awards)

- Global War on Terrorism Service Medal

- Iraq Campaign Medal (3 stars)

- Humanitarian Service Medal

- Army Service Ribbon

- Overseas Service Ribbon (2 awards)

- Army Reserve Components Overseas Training Ribbon

- Armed Forces Reserve Medal (20 yr hourglass, 2-M)

- Kentucky Merit Ribbon

- Kentucky Service Ribbon (5 awards)

- Kentucky State Active Duty Ribbon

- Ohio Faithful Service Ribbon (4 awards)

- Ohio Award of Merit (1 award)

- Ohio National Guard Basic Training Ribbon

- Air Assault Badge

- 9 mm Pistol Badge - Expert

The Defendant also belonged to several military/veteran organizations:

- National Guard Association of the United States

- Kentucky National Guard Officer Association

- Military Officer's Association of America

The Defendant's military record absolutely supports a downward departure or variance to the mandatory minimum of 5 years.

## **CONCLUSION**

Sentencing courts are, of course, charged with the responsibility of treating those that come before them as individuals. *See Koon v. United States, 518 U.S. 81, 113 (1996) ("It has been*

*uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.")*.  Courts are charged by Congress, as well, to impose a sentence that is sufficient, but not greater than necessary to fulfill the goals of sentencing established by Congress. *See 18 U.S.C. § 3553(a)*.

Mr. Treufeldt's work history, his lack of any criminal history, his age, and his education all suggest a reduced possibility of recidivism and are all relevant to the need to promote respect for the law.   Just, however, as a sentence that is too short may fail to reflect the seriousness of the offense, promote respect for the law, or provide just punishment, so will a sentence that is excessively harsh.  *See, e.g., United States v. Ontiveros, 07-CR-333, 2008 U.S. Dist. LEXIS 58774, \*6 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]"); United States v. Zavala, No. 07-14851, 2008 U.S. App. LEXIS 24168, \*8-9 (11th Cir. Nov. 25, 2008) ("[A]ny higher sentence would promote disrespect for the law.") (quoting the district court).*

Therefore based upon the intent of Congress and the facts and arguments herein, Mr. Treufeldt respectfully requests this Court to follow that tradition and impose the mandatory minimum of five years (60 months).

**Respectfully submitted,**

**s/ J. Clark Baird**
**J. CLARK BAIRD**
**Counsel for Defendant**
**969 Barret Ave.**
**Louisville, KY 40204**
**PHONE: (502) 583-3388**
**FAX: (502) 583-3366**
**EMAIL:  clark@jclarkbaird.com**

## CERTIFICATE OF SERVICE

I hereby certify that on June 9th, 2017  I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to Assistant United States Attorney, Jo Lawless and a copy will be sent via first class mail to:

**Hon. Jo Lawless**
601 West Broadway
Louisville KY 40202

*/s/ J. CLARK BAIRD*
**J. CLARK BAIRD**
**Counsel for Defendant**