UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| *vs.* | CRIMINAL ACTION NO. 3:16CR-40-DJH |
| JOHN TREUFELDT | DEFENDANT |

– *ELECTRONICALLY FILED* –
**SENTENCING MEMORANDUM**

Comes the United States of America, through counsel, Assistant United States Attorney Jo E. Lawless, and files its memorandum in support of sentencing in this action currently scheduled for June 21, 2017.

I. Factual Background

**A. Conduct giving rise to Criminal Complaint and Indictment**

Treufeldt, used an Internet account traced to his residence on Bridlevista Road, Louisville, Kentucky 40228. That account was connected to an online community of individuals who regularly sent and received child pornography *via* a website that operated on an anonymous online network. That website, previously referred to as "Website A" to protect ongoing investigations, has since been identified through various prosecutions across the country as "Playpen."

According to data obtained from logs on Playpen, monitored by law enforcement and other sources, a user with the user name "Elric" registered a Playpen account on February 25, 2015. According to the user "Elric's" profile, this user was a Normal Member of Playpen. Further, according to the Statistics section of this user's profile, the user "Elric" had been actively logged into the website for a total of 20 hours, one minute and 10 seconds between the dates of December 4, 2014, and February 28, 2015.

According to data obtained from logs on Playpen, monitoring by law enforcement, and other

sources, on February 25, 2015, "Elric" with IP address 74.138.65.210 logged into the site with a username and a password and accessed the post entitled "Latina Anal Part 1& 2". Among other things, this post contained preview images of a video depicting a young female child being orally penetrated by an adult penis. During the following additional sessions, the user "Elric" also browsed Playpen after logging into the website with a username and password. During these sessions, the user's IP address information was not collected.

On February 25, 2015, the user "Elric" accessed a post that contained a link to an image that depicted a nude pre-pubescent female holding her legs spread apart, exposing her vagina. That same date, "Elric" accessed a post that contained a link to an image that depicted a pre-pubescent female, nude from the waist down and her legs spread apart, exposing her vagina.

On March 15, 2016, law enforcement officials executed a federal Search Warrant on the residence of John Treufeldt in Louisville, Kentucky. During execution of the Search Warrant, Treufeldt agreed to be interviewed by law enforcement officials. During the course of the interview, Treufeldt admitted using the screen name "Elric" for several websites associate with child pornography as well as accessing websites on the Internet for the purpose of viewing and downloading child pornography. He also admitted maintaining a collection of child pornography videos and images on his computer that were secured by encryption. Later forensic examination of Treufeldt's computer revealed the presence of thousands of images (still and video) depicting children engaged in sexually explicit behavior.

## II.   Crimes of Conviction

Treufeldt agreed to plead guilty to the charge against him, that is, the receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). He did so pursuant to a Fed. R. Crim. P. 11(b)(1)(B) written Plea Agreement.

### III. Sentencing Guidelines calculations

Even in the post-*Booker* sentencing era, the Sixth Circuit Court of Appeals has reiterated the continued importance of the United States Sentencing Guidelines in the federal sentencing process. *See United States v. Anderson*, 526 F.3d 319 (6th Cir. 2008). The *Anderson* court opined that

> [a]t the outset, we note that it is unclear that an error in determining the Guidelines recommendation can ever be considered harmless post- *Gall. Gall* clearly directed the focus of sentencing courts to the Guidelines. For instance, the Court held that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. 128 S.Ct. at 596. '[T]he Guidelines should be the starting point and the initial benchmark,' so as to ensure fair sentencing 'administration and to secure nationwide consistency.' *Id.* Furthermore, the Court held, '[t]he fact that 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.' *Id.* at 596 n. 6. If the district court decides to sentence a defendant outside of the Guidelines range, then the district court 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. [The Court] f[ou]nd it uncontroversial that a major departure should be supported by a more significant justification than a minor one.' *Id.* at 597. On appeal, the Courts of Appeals 'must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range .... or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.' *Id.*

*Id.* at 329. The *Anderson* court further noted that such a focus on the Guidelines "is consistent with the Court's other recent sentencing precedent" and went on to reference the decisions in *United States v. Booker*, 543 U.S. 220, 245-46, (2005), *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007), and *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007), to include the opinions' respective references to the role of the Guidelines. *Id.* The United States has no objection to the Guideline calculations set out in the presentence investigation report (PSR).

A. Treufeldt objection

Treufeldt objected to the two-level enhancement under U.S.S.G. § 2G2.2(b)(6),[1] claiming that it overstates the seriousness of the offense given the prevalence of computer devices. There is no mention of the objection in his sentencing memorandum. Nevertheless, it is important to note that the enhancement was properly applied.

It is not necessary to use a computer to violate 18 U.S.C. § 2252A(a)(2)(A). *See United States v. Lewis*, 605 F.3d 395, 402-03 (6th Cir. 2010) ("we cannot say that computer use is an element of the crime.") So long as "the harm [an enhancement] addresses is real," the enhancement is valid, no matter how often it applies. *United States v. Walters*, 775 F.3d 778, 787 (6th Cir. 2015). That is all the more true here, given that the Sentencing Commission expressly recognized that the use of computer enhancement would apply in almost every case—and set a lower base offense level as a result. *United States v. Lester*, 2017 WL 1826889 at *1 (6th Cir. 2017) (citing USSG app. C, amend. 664, pp. 58-59. The district court was correct to apply the use of computer enhancement. *Lester*, 2017 WL 1826889 at *1.

Clearly, Treufeldt used a computer to carry out his receipt (and, the additional crime of possessing) child pornography. He could not have reached the Playpen site without a computer. The site required purposeful action. Its only purpose was to further the sexual interest in children shared by its users. The two-level enhancement is appropriate in this case.

B. Requests for variance/departure

In general, Treufeldt appears to complain that the child pornography Guidelines are generally flawed. Those arguments have been rejected by the Sixth Circuit. *United States v. Walters,* 775 F.3d

---

[1] As noted in the motion to accept late filing, the United States was not served with Treufeldt's objections.

778, 783–87 (6th Cir.), *cert. denied,* — U.S. ——, 135 S.Ct. 2913, 192 L.Ed.2d 943 (2015); *United States v. Cunningham,* 669 F.3d 723, 732–33 (6th Cir.2012); *see United States v. Simmons,* 587 F.3d 348, 361 (6th Cir.2009).

In the wake of *Booker,* the Guidelines sentencing range is no longer mandatory, of course, but advisory. *See United States v. Booker,* 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Yet the Guidelines continue to inform district courts' sentencing decisions. *United States v. Reilly*, 662 F.3d 754, 758 (6th Cir. 2011). "As a matter of administration and to secure nationwide consistency," the Court instructs, "the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 50 (2007). To reduce unwarranted sentencing disparities, the Guidelines do more than provide a recommended range, they enumerate specific factors that the district court should— and should not—consider in deciding whether to depart from the advisory sentencing range. *Reilly*, 662 F.3d at 758.

The United States objects to a downward variance or departure for any of the reasons cited by Treufeldt. The requests will be addressed *seriatim* and collectively.

**Age / military service / lack of criminal history**

Treufeldt suggests that his age (51) is a basis for a below-Guideline sentence. He ties arguments pertaining to recidivism to his age as well. Additionally, he claims that his military service and lack of criminal history warrant a reduced sentence. The arguments must fail.

Specifically, § 5H of the Guidelines identifies a number of offender characteristics that may be "relevant" to "the determination of whether a sentence should be outside the applicable guideline range." *Reilly*, 662 F.3d at 758 (quoting U.S.S.G. § 5H intro. cmt. (2009)). One subsection, for example, identifies military service as a possible ground for downward departure. *Id.* § 5H1.11. Another, § 5H1.1, sets out a policy statement concerning age as a basis for consideration.

5

Crucially, however, Congress has specifically instructed that child crimes and sexual offenses are to be treated differently than other types of crimes—the "sole grounds" permissible for a downward departure are those "expressly enumerated" in Part 5K. *Id.* § 5K2.0(b); *see also id.* app. C, amend. 649 (2003) (noting that the amendments to §§ 5K2.0 and 5K2.22 were "made directly by [Congress as part of] the PROTECT *759 ACT, Pub.L. 108–21"). *Reilly*, 662 F.3d at 758 . Neither a defendant's lack of prior criminal history nor his or her military service are enumerated in § 5K. *Id.* Accordingly, although these considerations are permissible grounds of departure for other types of crimes, these two factors are specifically excluded from consideration for child crimes and sexual offenses. *See id. (*citing §§ 4A1.3(b) (identifying possible downward departure for criminal history); 5H1.11 (identifying possible downward departure for military service). As the Guidelines commentary notes make explicit: "The standard for a downward departure in child crimes and sexual offenses differs from the standard for other departures." *Id.* § 5K2.0 cmt. (4)(B). Moreover, the notes caution:

> As reaffirmed in the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "PROTECT ACT", Public Law 108–21), circumstances warranting departure should be rare. Departures were never intended to permit sentencing courts to substitute their policy judgments for those of Congress and the Sentencing Commission. Departure in such circumstances would produce unwarranted sentencing disparity, which the Sentencing Reform Act was designed to avoid.

*Id.* § 5K2.0 background cmt. The Guidelines prohibit a downward departure from Treufeldt's sentencing range based on his age, lack of prior criminal history or his exemplary service in the armed forces. Granting Treufeldt's request for a downward departure would violate both the text of the Guidelines and the intent of Congress.

With regard to military service as a basis for a variance, § 5H1.11 does provide that "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and

6

distinguishes the case from the typical cases covered by the guidelines." Treufeldt, however, has not shown how his military service was so unusual as to warrant a downward adjustment. The general thrust of U.S.S.G. § 5H1.11 is that a downward adjustment for military service is "discouraged...." *United States v. Riley*, 2013 WL 1332450 at *6 (ED KY Mar. 11, 2013) (citing *United States v. Jared,* 50 Fed.Appx. 259, 260–61 (6th Cir.2002) (vacating sentence and remanding to district court for resentencing due to, among other reasons, the district court's having "based the downward departure in part on the discouraged feature of military service."). Sentence reductions for military service are so discouraged that the Fifth Circuit held that even a defendant who received two purple hearts and a distinguished flying cross did "not present such extraordinary circumstances as to require departure on the basis of this individual characteristic." *United States v. Peters,* 978 F.2d 166, 171 (5th Cir.1992).

Similarly, as noted above, § 5H1.1 covers age. It provides, in part, that "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient and less costly . . . ." Treufeldt's age – 51 -- can hardly be considered elderly. Nothing in his sentencing memorandum demonstrates how an alternative form of incarceration is warranted.

IV. Criminal History

The United States concurs with the criminal history calculation as set out in the PSR.

V. Statutory Factors

**A. Minimum and maximum penalties**

The statutory mandatory minimum sentence required for Count 1 is 5 years' imprisonment, with a maximum of 20 years' imprisonment. The maximum potential fine is $250,000.00. The term of Supervised Release is not less than five years and the maximum is life.

## B. 18 U.S.C. § 3553(a) factors

The total Sentencing Guidelines' offense level is 30. The Criminal History Category is correctly calculated at I. Consequently, the recommended punishment range is 97-121 months in prison. The fine range is $15,000.00 to $150,000.00.

This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). For the reasons that follow, the United States respectfully requests that the Court impose a sentence of 97 months' imprisonment followed by a 20-year term of Supervised Release and a $15,000.00 fine.

Title 18, United States Code, section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
    . . .

(5) any pertinent policy statement--
    . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)

Treufeldt stands convicted of very serious child exploitation offenses. Within the range of criminal acts perpetrated upon children, his conduct is not at the highest level – bur, remains significant. This is particularly true in light of his admissions that he has acquired child pornography over the course of many years. The volume of images is significant, thus, placing the number of victims very high.

Treufeldt is a college-educated adult. He maintained stable employment and strong personal ties in his daily life. All the while, he engaged in criminal conduct stemming from the sexual exploitation of children. He was cooperative with law enforcement when they arrived at his home with the federal search warrant.

The sentence imposed in this action should be substantial in order to adequately reflect the seriousness of the current offense, promote respect for the law, provide just punishment for the offense, deter further criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. A sentence of 97 months' imprisonment meets these factors.
Such a sentence will reflect the seriousness of Treufeldt's criminal conduct. A significant sentence of imprisonment will also promote respect for the law and give clear notice that child sex offenders will be punished harshly. A 97-month sentence will serve as a deterrent for further criminal conduct and protect the public from further crimes by Treufeldt. Deterrence matters. *United States v. Lukasavitz*, 2013 WL 1703326 at *7 (6th Cir. 2013). "Young children were raped in order to enable the production of the pornography" that Lukasavitz "both consumed himself and disseminated to others." *Id.* (quoting Garthus, 652 F.3d at 721–22. "The logic of deterrence suggests that the lighter the

punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *Id.* The logic in *Lukasavitz* is equally applicable in the case at bar.

With regard to avoiding sentencing disparities, that requirement's purpose is to promote national, not local, sentencing uniformity. *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). Thus, even if a district court acknowledges that a local disparity exists, the court is not obligated to reduce the defendant's sentence as a result. *United States v. Blackie*, 548 F.3d 395, 400 (6th Cir. 2008). As noted earlier, the Guidelines were developed, in part, to help avoid sentencing disparities.

In considering the kinds of sentences available, the statutory framework outlined above cannot be overlooked. The statutory mandatory minimum is not an appropriate sentence in this case. The bar is set at that point for offenders at the very bottom of offense conduct. While the United States acknowledges that Treufeldt is not the worst offender to come before the Court involved in the sexual exploitation of children, he is far from the least.

Treufeldt asks the Court to give a below-Guideline sentence based on arguments concerning recidivism. This District, alone, has seen an increase in repeat offenders – many of whom were previously prosecuted in this District. Mental health professionals and statisticians – not to mention lawyers – spend countless hours arguing about how to measure recidivism for criminal conduct that often goes undetected. On this issue, Judge Posner aptly noted, "[s]tatistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children." *United States v. Garthus,* 652 F.3d 715, 720 (7th Cir.2011). Treufedlt has demonstrated a long-standing sexual interest in children. His statement to law enforcement at the time of execution of the search warrant – as outlined in the Affidavit in support of the Criminal Complaint – illustrate the interest best:

> 9. On March 15, 2016, law enforcement officials executed a federal Search Warrant on the residence of John Treufeldt in Louisville, Kentucky. During execution of the Search Warrant,

Treufeldt agreed to be interviewed by affiant and FBI Special Agent Joseph Ranieri. During the course of the interview, Treufeldt admitted the following:

a. Accessing various websites on the Internet for the purpose of viewing and downloading child pornography;

b. Last viewing child pornography approximately one week ago;

c. Using the screen name "Elric" for several websites associated with child pornography;

d. Masturbating after viewing child pornography;

e. Maintaining a collection of child pornography videos and images on his computer – secured by encryption;

f. Deleting the child pornography several times, but reconstructing the collection after deleting; and

g. A preference for viewing images / videos of children ages 14-16.

**Restitution**

As noted in the PSR, several victim impact statements were provided to the United States Probation Office and shared with the Court and defense counsel. However, no specific requests for restitution have been made to the United States as of this filing.

CONCLUSION

Treufeldt's conduct has caused significant emotional pain and suffering for the victims and their families. The victim impact statements referenced above, give direct voice to that harm and pain. He should be punished for that harm.

For the reasons set forth herein, the United States respectfully requests the Court to apply the Sentencing Guidelines as set forth in the PSR and acknowledged above, follow the statutory directives set out in 18 U.S.C. § 3553(a), and impose a sentence of 97 months' imprisonment, followed by a 20-year term of Supervised Release.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by electronic means through the Court's ECF system on June 14, 2017, to defense counsel.

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney